AUSA: Craig Wininger Telephone: (313) 226-9569

AO 91 (Rev. 11/11) Criminal Complaint Special Agent: Miguel Colon Telephone: (202) 693-6999

# UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

United States of America
v.
Charles Marshall

Case: 2:26−mj−30627
Assigned To : Unassigned
Assign. Date : 10/6/2026
Description: SEALED MATTER (SH)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 2020 - October 2021 in the county of Wayne and Elsewhere in the Eastern District of Michigan, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 1344 | Bank Fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Miguel Colon, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

*Judge's signature*

Date: October 7, 2026

City and state: Detroit, Michigan

Anthony P. Patti- Magistrate Judge
*Printed name and title*

Save Print

# AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Miguel A. Colon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the U.S. Department of Labor, Office of Inspector General, Office of Investigations - Labor Racketeering and Fraud ("DOL-OIG/OI-LRF") and have been since December 2017. I am currently assigned to the Federal Bureau of Investigation ("FBI") Violent Gang Task Force ("VGTF") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Violent Crimes and Gangs group where I participate in investigations of street gangs committing various violations of federal law, including weapons and narcotics trafficking, violent crimes, and fraud.

2. Prior to my current assignment, I was assigned to the Homeland Security Investigations' Document and Benefit Fraud Task Force, where I investigated criminal activity including, but not limited to, identity theft, money laundering, visa fraud and other financial fraud. I have conducted numerous investigations involving identity theft, labor, financial and unemployment insurance fraud schemes. In addition to my experience, I have also received significant law enforcement training, including graduating from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center.

3. Probable cause exists that Charles Marshall (DOB: XX-XX-1997) has engaged in an unemployment insurance fraud scheme and has committed bank fraud (18 U.S.C. § 1344) in furtherance of that scheme. His scheme involved filing fraudulent UI claims through the internet and obtaining the cash benefits from his fraudulent claims through his use of debit cards assigned to federally insured banks where the benefits had been deposited.

4. I make this affidavit based upon personal involvement in the subject criminal investigation, including review of financial, employment, internet service provider, utility and property records; records from relevant state agencies regarding UI claims; law enforcement surveillances; and information and evidence from search warrants in this investigation. I have also been provided with information from other law enforcement agents and officials, including agents and officials from the ATF, and various State Workforce Agencies. This affidavit does not contain all the facts developed to date in the underlying investigation and is being submitted for the limited purpose of establishing probable cause to secure a criminal complaint and arrest warrant.

## BACKGROUND ON UNEMPLOYMENT INSURANCE

5. The Social Security Act of 1935 initiated the federal and state Unemployment Insurance system. The system provides benefits to individuals who are unemployed for reasons beyond their control. The purpose of the

Unemployment Insurance system is twofold: first, to lessen the effects of unemployment through cash payments made directly to laid-off workers, and second, to ensure that life necessities are met on a weekly basis while the worker seeks employment. The U.S. Department of Labor funds many Unemployment Insurance Agency administrative costs, including salaries, office expenses, and computer equipment. The various state unemployment insurance agencies responsible for administering the UI programs are commonly referred to as State Workforce Agencies ("SWA").

6. State unemployment systems and benefits are joint state and federal enterprises largely financed by taxes on private employers located in that state. In 2020 and 2021, the federal government provided significant supplemental benefits to the states as a result of the COVID-19 pandemic. Beginning in or about March 2020 and continuing through September 4, 2021, the Families First Coronavirus Response Act; Coronavirus Aid, Relief, and Economic Security Act; and the American Rescue Plan Act of 2021 created federal programs that allowed for the significant outlay of federal funds flowing to and through the states to offset the historic need for unemployment benefits by the American workforce. Collectively, these benefits are often referred to as Pandemic Unemployment Assistance ("PUA").

7. Normally (in the absence of fraud), an unemployed worker initiates an Unemployment Insurance claim. This can be accomplished by submitting a claim in person, over the telephone, or via the Internet. Currently, most Unemployment Insurance claims are filed online via the Internet through the states' UI portal. When a claimant using an internet protocol ("IP") address registered in Michigan files a claim with an out-of-state UI agency, the servers used to process those claims are located outside the state of Michigan. For example, an Arizona or California UI claim filed from an IP address registered to a Michigan residence will be processed through a server located outside of the state of Michigan.

8. To be eligible for Unemployment Insurance benefits, the worker must demonstrate a certain level of earnings in several quarters immediately preceding the application. The amount of benefits that an Unemployment Insurance claimant might be eligible for depends on a variety of factors, including but not limited to the length of his or her previous employment and the amount of wages he or she earned.

9. The State Workforce Agency will either approve or reject an Unemployment Insurance claim based on the application made by the unemployed worker. If the respective SWA approves an Unemployment Insurance claim, the claimant is required to re-certify the claim via telephone or Internet at various

times during the life of the claim. The worker must also certify that he or she is still unemployed and actively seeking work.

10. One way in which unemployment benefits are provided to a claimant is with a UI debit card, issued by a financial institution contracted by the respective state, which is mailed to the claimant through the U.S. Postal Service.

11. Alternatively, a claimant can provide the state Unemployment Insurance Agency with bank routing and account numbers to facilitate the electronic funds transfers ("EFTs") of the UI benefits directly into the claimant's bank account.

## **PROBABLE CAUSE**

12. The DOL-OIG and the ATF are investigating Charles MARSHALL. ATF and DOL-OIG developed evidence that, between May 4, 2020 and October 7, 2021, MARSHALL committed unemployment insurance ("UI") fraud in 19 separate states. Specifically, DOL-OIG identified 135 suspected fraudulent UI claims based, in part, on claims filed in MARSHALL's own name, the use of a common email address, phone number, bank account, IP address, and similarities in claim information.

13. On April 3, 2024, the ATF executed a federal search warrant at MARSHALL's residence in Inkster, Eastern District of Michigan. The search warrant authorized the seizure and search of MARSHALL's cellular phone for

evidence pertaining to a Hobbs Act robbery and firearm offenses. During the search operation, agents seized MARSHALL's Apple iPhone with assigned phone number 313-xxx-xx25. ATF subsequently performed a forensic extraction of the device.

14. On June 1, 2024, United States Magistrate Judge Anthony Patti authorized a search of the forensic extraction of MARSHALL's phone for evidence of UI fraud. That search, referenced in more detail below, revealed significant evidence of UI fraud to include notes and images containing personally identifiable information (PII), images of UI claim information for various claimants, and email user accounts associated with UI claims.

<u>Fraud indicators</u>

15. Agents reviewed the email addresses, claimant phone numbers, and addresses related to the 135 UI claims associated with MARSHALL. Agents found numerous commonalities among the claims, which are strong indicators of fraud. Some of those connections are as follows:

a. Phone number 313-xxx-xx25, was listed as the claimant phone number on eight of the 135 UI claims associated with MARSHALL. Phone number 313-xxx-xx25 is the number registered to MARSHALL's seized phone.

b. Email address "chuckbands1217@gmail.com" was listed in nine of the 135 UI claims, to include three UI claims filed in MARSHALL's name, in eight separate states. A search of MARSHALL's phone revealed that email address "chuckbands1217@gmail.com" was a registered user account on the device.

c. 51 of the 135 UI claims were filed using IP address 68.42.230.195 (hereinafter "IP 195"), to include MARSHALL's personal Michigan UI claim(s). An open-source database of IP 195 revealed that IP 195 was registered to Comcast Communications. In addition, the geolocation data revealed that IP 195 is associated with the Detroit area. In my training and experience in other fraud investigations, IP 195 was likely a unique IP address for a specific Comcast Cable Internet customer residence.

Defendant Charles MARSHALL submitted UI claims using his own identifying information.

16. On May 14, 2020, a Michigan UI claim was filed in the name, SSN, and DOB of defendant Charles MARSHALL.

a. The phone number listed on the claim was 313-xxx-xx25, the number registered to defendant MARSHAL's seized phone.

b. The email address listed on the claim was "chuckbands1217@gmail.com," the email registered on defendant MARSHAL's phone.

c. The Stride Bank account, administered through Chime[1], listed on the claim for the disbursement of UI benefits was a bank account ending in 5819. Records provided by Chime revealed that defendant MARSHALL was the accountholder listed on Stride bank account ending in 5819.

17. On July 21, 2020, an Arizona UI claim was filed in the name, SSN, and DOB of defendant Charles MARSHALL. The account listed on the claim for the disbursement of UI benefits was defendant MARSHALL's Stride Bank account ending in 5819.

Defendant Charles MARSHALL submitted UI claims using the identifying information of other individuals named Charles Marshall.

18. On July 22, 2020, an Arizona UI claim was filed in the name of Charles MARSHALL. The claimant used the SSN and DOB of another individual with the name Charles Marshall (Victim-1). The bank account listed on the claim

[1] Chime is a financial tech company that provides bank accounts. Chime provides application software that allows individuals to access the funds in their account or make financial transactions.

for the disbursement of UI benefits was defendant MARSHALL's Stride Bank account ending in 5819.

19. On July 22, 2020, a second UI claim was filed in the name of Charles MARSHALL in the state of Nevada. The claimant used the SSN and DOB of Victim-1. The bank account listed on the claim for the disbursement of UI benefits was defendant MARSHALL's Stride Bank account ending in 5819.

20. On August 9, 2020, a third UI claim was filed in the name of Charles MARSHALL in Guam. The claimant used the SSN and DOB of Victim-1. The bank account listed on the claim for the disbursement of UI benefits was MARSHALL's Stride Bank account ending in 5819.

21. On July 19, 2024, I interviewed Victim-1, whose real identity was used in the July 22, 2020, Arizona; July 22, 2020, Nevada; and August 9, 2020, Guam UI claims. Victim-1 stated he was a victim of identity theft. Victim-1 stated he did not file the claims in Arizona, Nevada or Guam, had not received any UI benefits from those claims, and did not give permission to anyone to file UI claims on his behalf.

22. On July 28, 2020, a Kansas UI claim was filed in the name of Charles MARSHALL. The claimant used the SSN and DOB of another individual named Charles Marshall (Victim-2). The phone number listed on the claim was 313-xxx-xx25, the same phone number registered to MARSHALL's seized phone. The

email address listed on the claim was "chuckbands1217@gmail.com," the same email address registered on MARSHALL's phone.

23. On September 11, 2020, a Louisiana UI claim was filed in the name of Charles MARSHALL. The claimant used the SSN and DOB of another individual named Charles Marshall (Victim-3). The IP address registered on the claim was IP 195, the same IP address registered on MARSHALL's May 14 Michigan UI claim.

24. On October 17, 2020, a New York UI claim was filed in the name of Charles MARSHALL. The claimant used the SSN and DOB of another individual named Charles Marshall (Victim-4). A search of the "Notes" section of MARSHALL's seized phone revealed a note containing PII belonging to Victim-4. The IP address registered on the claim was IP 195. The phone number listed on the claim was 313-xxx-xx25, the same phone number registered on MARSHALL's phone. The bank account listed by the claimant for the disbursement of UI benefits was Choice bank account ending in 4753.

a. Records provided by Choice Bank revealed that the accountholder listed on account ending in 2412 was Charles MARSHALL. The phone number listed on the account was 313-xxx-xx25, the same number registered on MARSHALL's phone. In addition, the email

address listed on the account was "chuckbands1217@gmail.com," the same email registered on MARSHALL's phone.

25. On November 26, 2020, a New York UI claim was filed in the name of Charles MARSHALL. The claimant used the SSN and DOB of another individual named Charles Marshall (Victim-5). The bank account listed on the claim for the disbursement of UI benefits was MARSHALL's Stride Bank account ending in 5819. A search of the "Notes" section of MARSHALL's phone revealed a note containing PII belonging to Victim-5. In addition, an image pertaining to this claim was found on MARSHALL's phone.

a. On July 19, 2024, I interviewed Victim-5, who stated he was a victim of identity theft. Victim-5 stated he did not file the November 26, 2020, UI claim in New York, had not received any UI benefits, and did not give permission to anyone to file a UI claim on his behalf.

b. Records provided by Chime revealed that between November 30, 2020, and January 5, 2021, the New York State Department of Labor deposited $15,414 in UI benefits into Charles MARSHALL's Stride Bank account.

c. Stride Bank is a financial institution as defined in Title 18, United States Code, Section 20.

Defendant Charles MARSHALL submitted UI claims using the identifying information of other individuals.

26. On June 10, 2020, an Arizona UI claim was filed in the name of R.F., a real person whose identity is known to agents but withheld to protect their privacy, using IP 195. The email address listed on the claim was "chuckbands1217@gmail.com."

27. On June 15, 2020, an Arizona UI claim was filed in the name of S.P., a real person. The email address listed on the claim was "chuckbands1217@gmail.com."

28. On June 18, 2020, an Arizona UI claim was filed in the name of R.A., a real person, using IP 195. An image containing R.A.'s PII was found on MARSHALL's phone.

29. On June 24, 2020, a Nevada UI claim was filed in the name of C.K., a real person. The email address listed on the claim was "chuckbands1217@gmail.com."

30. On August 27, 2020, a Maryland UI claim was filed in the name of A.P., a real person. The phone number listed on the claim was 313-xxx-xx25, the same phone number registered on MARSHALL's phone. The email address listed on the claim was "chuckbands1217@gmail.com," A search of MARSHALL's phone revealed a note containing the name and PII of A.P

31. On August 28, 2020, a California UI claim was filed in the name of S.C., a real person. The address listed on the claim for the mailing of a BOA UI debit card was 10XX Center St., Inkster, MI, an address in the Eastern District of Michigan. A review of MARSHALL's phone revealed an image of a California UI claim in S.C.'s name bearing the same claim details as the August 28, 2020, California UI claim filed in S.C.'s name

a. On July 19, 2024, I interviewed S.C. who stated s/he was a victim of identity theft. S.C. stated s/he did not file the claim in California, had not received any UI benefits from those claims, and did not give permission to anyone to file UI claims on his or her behalf.

b. A review of Bank of America records revealed that on September 2, 2020, the California Employment Development Department deposited $21,000 in UI benefits into a Bank of America account established in S.C.'s name. Some of these funds were subsequently withdrawn from ATMs in the EDMI.

c. Bank of America is a financial institution as defined in Title 18, United States Code, Section 20.

32. In total, approximately $548,594 in UI benefits were disbursed on claims associated to MARSHALL.

## CONCLUSION

33. Based on the forgoing, there is probable cause to believe that Charles MARSHALL has committed bank fraud (18 U.S.C. § 1344) in connection with a scheme to defraud and to obtain money owned by, and under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations, and promises.

Respectfully submitted,

Miguel A. Colon
Special Agent
U.S. Department of Labor
Office of Inspector General

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: October 7, 2026

Hon. Anthony P. Patti
United States Magistrate Judge